UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRIS POW and MADELAINE
VALDEZ,

                            Plaintiffs,

            -v.-

ARMELLINI INDUSTRIES INC. and
JASSEN LOISEAU,

                            Defendants.

22 Civ. 10908 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Madelaine Valdez and Chris Pow claim that they sustained serious personal injuries in a motor vehicle accident with a truck owned by Defendant Armellini Industries Inc. ("Armellini") and operated by Defendant Jassen Loiseau (with Armellini, "Defendants") on October 15, 2019, as a result of Defendants' negligence. Defendants now move for summary judgment on the ground that neither Plaintiff sustained a "serious injury," as is required to recover in tort for non-economic loss under New York Insurance Law § 5104(a). For the reasons that follow, the Court finds that neither Plaintiff sustained a serious injury and grants Defendants' motion for summary judgment.

**BACKGROUND**[1]

**A.    Factual Background**

**1.    The Parties**

Plaintiffs Chris Pow and Madelaine Valdez are individuals who reside in New York.  (Compl. ¶ 1).  Defendant Armellini is a Florida corporation, with its principal place of business in Florida.  (*Id.* ¶ 3; Notice of Removal ¶ 6).  Defendant Jassen Loiseau is an individual who resides in Florida.  (Notice of Removal ¶ 7).

**2.    The October 15, 2019 Motor Vehicle Accident**

On October 15, 2019, Valdez was driving a 2018 Honda Odyssey on the Cross Bronx Expressway near the White Plains Road, Bronx River exit.  (Joint 56.1 ¶¶ 1-3).  Pow — her husband and the vehicle's owner — was seated in the middle row on the passenger side.  (*Id.* ¶¶ 4-6).  In the minutes leading up to the accident, Valdez had been driving in the middle lane in stop-and-go traffic.  (*Id.* ¶¶ 7-8).  Valdez came to a stop, and then a truck in front of her rolled back and hit the front of her Odyssey.  (*Id.* ¶¶ 10-12).  The truck was owned and

---

[1]    The facts set forth in this Opinion are drawn from the parties' submissions in connection with Defendants' motion for summary judgment.  The Court primarily sources facts from the parties' joint Local Rule 56.1 Statement (Dkt. #37-1 ("Joint 56.1")), and the exhibits attached thereto (Dkt. #37-3 – 37-17 ("Joint App'x, Ex. [ ]")), including the depositions of Madelaine Valdez (Joint App'x, Ex. A ("Valdez Dep.")) and of Chris Pow (*id.*, Ex. B ("Pow Dep.")), as well as the state court Complaint (Dkt. #1-1 ("Compl.")) and the Notice of Removal (Dkt. #1).  Citations to the Joint Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion for summary judgment as "Def. Br." (Dkt. #37-18); to Plaintiffs' memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #43); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #39).

managed by Armellini (Compl. ¶¶ 5, 9-10), and it was operated at the time of the accident by Loiseau in his capacity as an Armellini employee (*id.* ¶¶ 7-8).

Plaintiffs allege that, as a result of the accident, Valdez sustained several injuries including post-traumatic stress disorder; whiplash; pain in her back, right shoulder, and right hip; and a right ankle sprain (Joint 56.1 ¶ 13), and that Pow sustained several injuries including a rib fracture; a left collarbone fracture; injuries to his knees; a pinched nerve in his neck; spine herniations; and "left shoulder leakage" (*id.* ¶ 14).

### B.    Procedural Background

Litigation regarding the underlying events began with Plaintiffs' filing a complaint in the Supreme Court of New York, Bronx County, on October 14, 2022. (*See* Compl.).  Plaintiffs alleged negligence by Defendants that caused them serious personal injuries.  (*Id.* ¶¶ 19-24).  On December 27, 2022, Defendants timely removed the action to this Court on the basis of diversity of citizenship jurisdiction.  (Notice of Removal).  *See* 28 U.S.C. § 1332; *id.* §§ 1441, 1446.  Defendants then filed an answer on January 3, 2023.  (Dkt. #4).

Not unlike traffic on the Cross Bronx Expressway, the procedural history in this action has been stop-and-go.  An initial pretrial conference was held on February 28, 2023 (*see* Dkt. #13), and the Court entered a case management plan and scheduling order that same day (Dkt. #12)  After granting an initial three-week extension of the deadline to complete depositions of fact witnesses on June 7, 2023 (*see* Dkt. #14-15), the Court granted a request for a lengthier

extension of the discovery deadlines on June 28, 2023 (*see* Dkt. #16-19).  The parties requested still another extension on November 10, 2023.  (Dkt. #20). The Court granted this request in part at a post-fact-discovery pretrial conference held on November 16, 2023, allowing an extension of the fact discovery deadline to January 31, 2024 (*see* November 16, 2023 Minute Entry). Then, on January 26, 2024, with Plaintiffs' consent, Defendants requested another extension of the fact discovery deadline.  (Dkt. #23).  The Court denied this request without prejudice to its renewal if and when the parties offered a more detailed explanation for the delay.  (Dkt. #24).  Defendants renewed their request on January 31, 2024.  (Dkt. #25).  The next day, the Court granted this request and extended the fact discovery deadline to April 1, 2024, while advising the parties that no further extension requests would be granted.  (Dkt. #26).  After fact discovery closed, the parties requested that they be referred to the District's Mediation Program.  (Dkt. #27).  The Court obliged and referred the parties to the Mediation Program on April 22, 2024.  (Dkt. #28).

Mediation was unsuccessful (*see* June 17, 2024 Minute Entry), and so, on July 3, 2024, Defendants filed a pre-motion letter seeking leave to file a motion for summary judgment regarding whether Plaintiffs had met the required "serious injury" threshold (Dkt. #29).  Plaintiffs did not file a response. (*See* Dkt. #30).  A pre-motion conference was held on August 21, 2024, at which the parties were ordered to submit a proposed briefing schedule and/or an application for an extension of the expert discovery deadline by September 6, 2024.  (Dkt. #31).  On September 6, 2024, the parties submitted

a proposed briefing schedule for Defendants' summary judgment motion.  (Dkt. #32).  As the letter containing the proposed briefing schedule did not contain an application for an extension of the expert discovery deadline, the Court considered expert discovery to be concluded (Dkt. #33), and it set a briefing schedule for the summary judgment motion (*id.*).

After the Court granted a short extension request (Dkt. #35-36), Defendants filed their opening brief on November 15, 2024 (Dkt. #37-18), as well as a Joint Local Rule 56.1 Statement of Material Facts (Dkt. #37-1), and a Joint Appendix of Exhibits (Dkt. #37-3 – 37-17 (Exhibits A through O)).  On December 28, 2024, Plaintiffs filed an attorney's certification regarding their opposition to Defendants' summary judgment motion.  (Dkt. #38).  Plaintiffs' brief in opposition to the motion was belatedly filed on the docket on January 9, 2025 (Dkt. #43), though Plaintiffs had sent their brief to Defendants via email on December 28, 2024 (*see* Dkt. #40, 42).  Defendants filed their reply brief on January 6, 2025.  (Dkt. #39).

## DISCUSSION

### A.    Applicable Law

#### 1.    Summary Judgment

To succeed on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), a party must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could

return a verdict for the non-moving party." *Senno* v. *Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P.* v. *Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  And a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

When considering whether the movant has met its burden to "show that no genuine factual dispute exists," a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  That said, the non-movant "may not rely on unsupported assertions, conjecture[,] or surmise" to manufacture factual disputes. *Balderramo* v. *Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 219 (S.D.N.Y. 2023) (citing *Goenaga* v. *March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)).  Rather, to defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

### 2.    The "Serious Injury" Threshold

Under New York's No-Fault Law, there is no right of recovery for non-economic loss in an action for personal injury arising out of negligence in the use or operation of a motor vehicle unless a covered person sustained a "serious injury." N.Y. Ins. Law § 5104(a).  A "serious injury" is defined as:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture;

6

> loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

*Id.* § 5102(d). "[T]he New York Court of Appeals [has] held that a court should decide the threshold question of whether the evidence would warrant a jury finding that the injury qualifies as a 'serious injury.'" *Yong Qin Luo* v. *Mikel*, 625 F.3d 772, 776-77 (2d Cir. 2010) (citing *Licari* v. *Elliott*, 57 N.Y.2d 230, 236-38 (1982)).

A burden-shifting framework governs a court's determination whether a given injury is a "serious injury." The defendant bears the initial burden of "establish[ing] a prima facie case that [the] plaintiff's injuries were not serious." *Gaddy* v. *Eyler*, 79 N.Y.2d 955, 956 (1992). To meet this burden, the "defendant may rely on … unsworn reports by [the] plaintiff's physicians, but must provide evidence from its own physicians in the form of sworn affidavits." *Barth* v. *Harris*, No. 00 Civ. 1658 (CM), 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001) (citing *McGovern* v. *Walls*, 607 N.Y.S.2d 964, 965 (2d Dep't 1994); *Looney* v. *Epervary*, 599 N.Y.S.2d 989, 989-90 (2d Dep't 1993)). "The burden then shift[s] to [the] plaintiff to come forward with sufficient evidence to overcome [the] defendant's motion by demonstrating that she sustained a serious injury." *Gaddy*, 79 N.Y.2d at 957.

"For [the] plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians." *Barth*, 2001 WL 736802, at *2 (citing *Bonsu* v. *Metro. Suburban Bus. Auth.*, 610 N.Y.S.2d 813, 813-14 (2d Dep't 1994); *McLoyrd* v. *Pennypacker*, 577 N.Y.S.2d 272, 273 (1st Dep't 1991)). The "[p]laintiff must present objective proof of injury." *Mikel*, 625 F.3d at 777; *see also Alim* v. *United States*, No. 21 Civ. 2234 (LJL), 2023 WL 2929380, at *20 (S.D.N.Y. Apr. 13, 2023) (collecting cases). For example, "to prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury." *Toure* v. *Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350 (2002). "An expert's *qualitative* assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose[,] and use of the affected body organ, member, function[,] or system." *Id.*

The "require[ment] [of] objective proof of a plaintiff's injury" aims to give effect to "the 'legislative intent underlying the No-Fault Law … to weed out frivolous claims and limit recovery to significant injuries.'" *Toure*, 98 N.Y.2d at 350 (quoting *Dufel* v. *Green*, 84 N.Y.2d 795, 798 (1995)). As such, a plaintiff's subjective complaints of pain alone are insufficient to meet the burden of establishing a serious injury. *See Licari*, 57 N.Y.2d at 238-39; *Toure*, 98 N.Y.2d at 350; *Scheer* v. *Koubek*, 70 N.Y.2d 678, 679 (1987).

8

### B.    Neither Plaintiff Sustained a "Serious Injury"

Defendants maintain (Def. Br. 8, 14-16) — and Plaintiffs do not dispute (*see* Pl. Opp. 7-8) — that Plaintiffs' injuries could conceivably fall into only three categories of "serious injury": (i) with respect to both Plaintiffs, a "significant limitation of use of a body function or system," N.Y. Ins. Law. § 5102(d); (ii) with respect to Pow's injuries, "a fracture," *id.*; or (iii) with respect to both Plaintiffs, "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (a "90/180 Day" injury), *id.*  The Court finds that Defendants have met their prima facie burden to establish that Plaintiffs did not sustain a "serious injury" in any of these three senses, shifting the burden to Plaintiffs.  As Plaintiffs fail to meet their burden, there is no genuine dispute of material fact, and Defendants' presentation of objective evidence entitles them to judgment as a matter of law.

### 1.    Significant Limitation

"Whether a limitation of use or function is 'significant' or 'consequential' (*i.e.*, important) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose[,] and use of the body part." *Comba* v. *United States*, 535 F. Supp. 3d 97, 109 (E.D.N.Y. 2021) (quoting *Dufel*, 84 N.Y.2d at 798

(internal citation omitted)); *see also Alim*, 2023 WL 2929380, at \*24 ("A limitation of the use of a body function or system means that the function or system does not operate at all or operates only in some limited way. ...  [T]he limitation of use must be significant, meaning that the loss is important or meaningful." (alteration and omission in original) (quoting N.Y. Pattern Jury Instructions — Civil 2:88F (2023 Ed.))).  "As with all categories of serious injury, the significance of the limitation must be supported by credible medical evidence and must be objectively measured and quantified."  *Alim*, 2023 WL 2929380, at \*24 (citing *Ventra* v. *United States*, 121 F. Supp. 2d 326, 333-34 (S.D.N.Y. 2000)).  "Subjective complaints of pain are insufficient to establish a significant limitation, unless accompanied by" such objective evidence.  *Id.* (quoting *Ruffin* v. *Rana*, No. 11 Civ. 5406 (MHD), 2013 WL 4834368, at \*14 (S.D.N.Y. Sept. 4, 2013) (internal quotation marks and citation omitted)).  Likewise, a "minor, mild[,] or slight limitation of use should be classified as insignificant within the meaning of the statute."  *Licari*, 57 N.Y.2d at 236; *accord Gaddy*, 79 N.Y.2d at 957; *see also, e.g., Adams* v. *Pagano*, 767 N.Y.S.2d 477, 478-79 (3d Dep't 2003) (finding "degenerative changes inconsistent with the trauma of a motor vehicle accident" and that "plaintiff's subjective complaints of pain and stiffness" were insufficient).

Defendants have proffered sworn expert reports, including those of neurologist Dr. S. Murthy Vishnubhakat, who examined both Plaintiffs (Joint App'x, Ex. D (regarding Valdez), Ex. F (regarding Pow)); orthopedic surgeon Dr. Jason Baynes, who also examined both Plaintiffs (*id.*, Ex. E (regarding

10

Valdez), Ex. G (regarding Pow)); and consultant Dr. Alfred Bowles, M.D., who conducted an impact force analysis of the accident and examined both Plaintiffs' prior medical records (*id.*, Ex. H).  After examining Valdez and reviewing her prior medical records, Dr. Vishnubhakat concluded that Valdez's "entire neurological evaluation … was essentially normal without any objective evidence of injury … as a result of the subject accident," and that "there is no evidence of injury to the neural structures of the brain, spinal cord and all nerve roots[,] and thus there is no neurological disability, permanency[,] or neurological adverse prognostic indicators related to the subject accident." (*Id.*, Ex. D at 7).  Dr. Vishnubhakat also examined Pow, reviewed his prior records, and reached substantially the same conclusions about Pow.  (*See id.*, Ex. F at 7).

For his part, Dr. Baynes examined Valdez, reviewed her prior medical records, and concluded that any strains or sprains had resolved; that Valdez "did not sustain any acute injury" and "can do all activities with no restrictions at this time and has no disability"; and that "there was no significant trauma [associated with] any of these alleged injuries." (Joint App'x, Ex. E at 3).  Dr. Baynes examined Pow, reviewed his prior medical records, and likewise concluded that any strains or sprains had resolved; that Pow had "sustained a low impact injury from the motor vehicle accident that would not cause any permanent injuries"; and that Pow has "no acute injuries" and "no permanency

and no sequelae as a result of the accident." (*Id.*, Ex. G at 3).[2]  The Court finds that these objective medical reports establish that any limitations of Plaintiffs' use of certain body functions or systems are insignificant and unrelated to the accident.  Thus, Defendants have satisfied their initial burden.  *See, e.g.*, *Bass* v. *Hout*, No. 13 Civ. 8516 (ER), 2019 WL 6527944, at *5 (S.D.N.Y. Dec. 4, 2019) (finding that the "defendants successfully [made] a prima facie case" based on a doctor's expert report opining that the plaintiff's shoulder injury was not caused by the accident and was attributable to other causes).

The burden thus shifts to Plaintiffs, who have not proffered any sworn affidavits by physicians, as is typically required.  *Cf. Barth*, 2001 WL 736802, at *2.  The analysis does not end there, however, because the Court is obliged to determine if "a search of the record as a whole demonstrates a question of genuine fact as to whether [either] plaintiff sustained a serious injury."  *Mikel*, 625 F.3d at 778.  It does not.  Unlike in *Mikel*, the record contains no sworn deposition testimony by Plaintiffs' doctors.  *Cf. id.*  Mere references to Plaintiffs' prior medical records and examinations by other doctors, which are scattered throughout the record, are insufficient to establish a serious injury, especially

---

[2]     Additionally, Dr. Bowles reviewed an array of records, including, *inter alia*, Plaintiffs' prior medical records and photographs of Plaintiffs' vehicle and the accident scene, and concluded that Plaintiffs "experienced a minor frontal impact" during the accident; that Valdez's wrist injury was "nonspecific for any impact-related force application that would have been produced in the described incident"; and that, though Pow's shoulder pain and back strain "can be attributed to abrupt movements that are associated with the minor collision event," the contemporaneous medical imaging was "consistent with degenerative process and pre-existing conditions" and "[t]here were no described findings that would objectively establish that any injury was caused by forces, movements[,] or accelerations experienced during the subject crash event."  (Joint App'x, Ex. H at 2, 11-12).

since Defendants' experts analyzed these in their sworn reports.  (*See, e.g.*, Joint App'x, Ex. D-H).  In effect, Plaintiffs only proffer subjective complaints of pain (*see, e.g.*, Valdez Dep. 61:17-62:24; Pow Dep. 80:1-24-81:5), which are insufficient to meet their burden of establishing a significant limitation, *see Licari*, 57 N.Y.2d at 238-39; *Alim*, 2023 WL 2929380, at *24.  Accordingly, Plaintiffs cannot establish that they sustained significant limitations.

### 2.    Fracture

Turning to whether Pow sustained "a fracture," N.Y. Ins. Law. § 5102(d), the Court observes that the only evidence in the record to support this is Pow's subjective complaints, which are insufficient.  Pow testified that, as a result of the accident, he has a "fractured tenth rib" and a "fractured left collarbone." (Pow Dep. 74:17-18; *accord* Joint App'x, Ex. C at 4).  However, Dr. Vishnubhakat remarked that an x-ray taken days after the accident revealed no evidence of an "acute fracture," and that a March 2020 MRI contained "no description of any fracture."  (Joint App'x, Ex. F at 5).  Dr. Baynes likewise made no mention of any fracture.  (*Id.*, Ex. G).  And, indeed, a report of an x-ray of Pow's left shoulder taken three days after the accident found "[n]o evidence of acute fracture."  (*Id.*, Ex. M at 2).  As no objective evidence in the record supports Pow's claim that he sustained a fracture, this, too, is insufficient to establish a serious injury.

### 3.    90/180 Day Standard

Finally, as for "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing

13

substantially all of the material acts which constitute such person's usual and customary daily activities for not less than [90] days during the [180] days immediately following the occurrence of the injury or impairment," N.Y. Ins. Law § 5102(d), there is no objective evidence in the record to support a claim of such an injury.  To establish a serious injury under the 90/180 Day standard, there must be such objective evidence, otherwise a court must conclude that any "treating physician's opinion was dependent upon [the plaintiff's] subjective complaints and [is] therefore insufficient."  *Watt* v. *E. Investigative Bureau, Inc.*, 708 N.Y.S.2d 472, 474 (2d Dep't 2000); *see also Escoto* v. *United States*, 848 F. Supp. 2d 315, 330 (E.D.N.Y. 2012) ("The plaintiff's allegations that her injuries fell within the 90/180 day category must be substantiated by objective medical proof; self-serving statements are insufficient."); *Alim*, 2023 WL 2929380, at *25 (noting that the objective medical evidence "cannot be purely anecdotal; a plaintiff claiming that he could not or cannot engage in certain activities must show that any restrictions were medically indicated"). Additionally, the words "substantially all" have been interpreted "to mean 'that the person has been prevented from performing his [or her] usual activities to a great extent, rather than some slight curtailment.'"  *Escoto*, 848 F. Supp. 2d at 330 (alteration in original) (quoting *Thompson* v. *Abbasi*, 788 N.Y.S.2d 48, 53 (1st Dep't 2005)).

There is no such objective evidence in the record.  Valdez testified that she was unable to work for nearly six months following the accident, from October 16, 2019, to April 17, 2020.  (Valdez Dep. 55:7-16).  Aside from this

testimony, as discussed *supra*, section B.1, there is no objective medical proof that Valdez's injuries prevented her from performing substantially all of her customary daily activities for 90-180 days following the accident.  Pow testified that, due to injuries from the accident, he "can't put [himself] out there the way [he] should and [could] if [he] wasn't with the injuries."  (Pow Dep. 16:23-17:1). Likewise, aside from this testimony, as discussed *supra*, section B.1, there is no objective medical proof that Pow's injuries prevented him from performing substantially all of his customary daily activities for 90-180 days following the accident.  The Court thus lacks evidence from which it could conclude that Plaintiffs' injuries prevented them from undertaking substantially all of their activities of daily living for the 90/180 Day period.

In sum, Plaintiffs have not demonstrated that they sustained a "serious injury," as defined by New York Insurance Law § 5102(d), from the accident. Therefore, they cannot recover any non-economic damages from Defendants.

## CONCLUSION

For the above reasons, the Court concludes that Plaintiffs are not entitled to recover damages for their alleged injuries under New York law.  The Clerk of Court is directed to enter judgment for Defendants; to terminate all pending motions; adjourn all remaining dates; and close this case.

SO ORDERED.

Dated:      April 22, 2025
            New York, New York

                                        _____
                                        KATHERINE POLK FAILLA
                                        United States District Judge